JUSTICE TIMPONE
delivered the opinion of the Court.
In this appeal, we clarify the methodology to be used in analyzing whether two offenses are the “same offense” for double jeopardy purposes. Since the 1980s, we have applied both the same-evidence test and the same-elements test in double jeopardy determinations. A finding that offenses met either test resulted in double jeopardy protection for the defendant. In contrast, the federal courts and most state jurisdictions apply only the same-elements test, as articulated by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
We now join the majority of jurisdictions in returning to the Blockburger same-elements test as the sole test for determining what constitutes the “same offense” for purposes of double jeopardy. Here, because we are changing course, we examine the facts through the additional lens of the now-replaced same-evidence test as a matter of fairness to defendant Rodney Miles.
I.
In October 2010, the Camden County police arrested defendant for selling marijuana to an undercover police officer on the comer *87 of 27th and Washington Streets in Camden, New Jersey. Defendant was charged in a warrant complaint with possession of marijuana with intent to distribute, in violation of N.J.S.A. 2C:35-5(b)(12), and possession of a controlled dangerous substance (CDS) with intent to distribute on or within 1000 feet of a school property, in violation of N.J.S.A. 2C:35-7. In a separate municipal summons, defendant was charged with the disorderly-persons offense of possession of fifty grams or less of marijuana, in violation of N.J.S.A. 2C:35-10(a)(4). Those charges arose from the same attempted sale.
A Camden County grand jury returned an indictment charging defendant with the offenses in the warrant complaint. Defendant then appeared pro se in municipal court to resolve the disorderly-persons offense charged in the municipal summons. Defendant appeared via video conference from the county jail, where he was being held on an unrelated child-support charge. At some point before that video proceeding, the original municipal charge was amended to a different disorderly-persons offense—loitering to possess marijuana, in violation of N.J.S.A. 2C:33—2.1(b)(1). Confusion ensued as evidenced by the following colloquy between the judge and defendant at the municipal court proceeding:
Q. All right. You’re charged on October 15, 2010, with loitering to possess marijuana at 27th and Washington Street in Camden.
A. Yes, sir.
Q. Do you wish to have an attorney in this matter?
A. No, sir. What—they got me—can I ask you something? This is a municipal charge, right, Your Honor?
Q. Yes.
A. Well, why they got me going to Superior Court for this, Your Honor? That’s why I said I don’t understand.
Q. No, no, you’re not going to Superior Court for this. You’re going to Superior Court for child support, sir.
A. No, no, no, they had me—
Q. Sir.
A. Okay.
Q. Trust me. I am not going to argue with you.
A. No, I’m not arguing.
*88 Q. I'm not going to argue with you.
A. Oh, okay.
Q. You’re charged with loitering to possess marijuana in Camden, October 15, 2010. It’ll be a $500 fine plus mandatory costs. Do you understand the penalties?
A. Yes, sir.
Defendant then pled guilty to the charge of loitering to possess marijuana.
Thereafter, defendant moved to dismiss the Superior Court indictment on double-jeopardy grounds, arguing that prosecution on the possession charges was barred because he had already pled guilty to an offense that arose from the same conduct. Despite some puzzlement as to why the municipal court had amended the disorderly-persons offense, the Superior Court denied defendant’s motion to dismiss. The Superior Court reasoned that prosecution on the indicted charges was not barred because it required proof of an additional element—proximity to a school. Defendant pled guilty to possession of CDS with intent to distribute within 1000 feet of a school (the school-zone charge), but preserved his right to appeal the denial of the motion to dismiss.
On appeal, the Appellate Division remanded for a finding on the circumstances surrounding the amendment on the disorderly-persons offense, specifically focusing on whether the prosecutor was involved in amending the charge. The panel noted that a plea to the original municipal charge, instead of the amended one, could have led to a different result after applying the double-jeopardy analysis.
On remand, the Superior Court found no direct evidence as to the circumstances surrounding the amendment, but learned that it was typical in municipal court to amend charges where appropriate to help defendants avoid more serious penalties and fines. During the remand hearing, the prosecutor represented that his office was not informed of defendant’s municipal court proceedings. The court, having determined that the prosecutor played no role in the amendment of the municipal court charge, found nothing atypical in the amendment process.
*89 Despite defendant’s expressed confusion during the municipal court plea hearing, the Superior Court found him to be “fully cognizant” of the pending Superior Court prosecution because he previously appeared in that court on four separate occasions for pretrial conferences on the indicted charges. The court concluded that the school-zone prosecution was not precluded by notions of fundamental fairness.
Defendant appealed again, arguing that because the remand hearing revealed no definitive information on the circumstances of the amendment, the municipal court had jurisdiction over the disorderly-persons offense and, as a result, double jeopardy barred prosecution on the school-zone charge. The Appellate Division agreed. State v. Miles, 443 N.J.Super. 212, 220, 227, 128 A.3d 700 (App. Div. 2015). The panel recognized, however, that the Appellate Division was divided as to how to determine whether two offenses are the same offense for double-jeopardy purposes. Id. at 226-27. It explained that some panels have adhered to current New Jersey law, under which subsequent prosecutions are barred under either of two tests—the same-elements test or the same-evidence test—and other panels have adopted the United States Supreme Court’s exclusive use of the same-elements test. Ibid. Having analyzed the facts under both tests, the Appellate Division found that, although the second prosecution was not barred under the same-elements test, it was barred under the same-evidence test. Id. at 225-27.
The State filed a petition for certification, which we granted. 225 N.J. 339, 137 A.3d 1198 (2016).
II.
The State’s arguments are threefold: (1) the municipal court lacked jurisdiction to unilaterally adjudicate defendant’s disorderly-persons offense after the grand jury returned the indictment on the other charges; (2) the municipal court’s action was beyond its jurisdiction and is thus a legal nullity which may not serve as the basis for defendant’s double jeopardy claim; and (3) in the alter *90 native, if the municipal court is found to have had jurisdiction, the State urges this Court to eliminate the same-evidence test. Under the same-elements test then, the State advocates that the school-zone prosecution is not barred by double jeopardy because both statutes at issue require proof of an element that the other does not.
Defendant, in turn, contends that: (1) the municipal court had statutory jurisdiction over the disorderly-persons offense, thereby validating his claim that the school-zone prosecution constituted double jeopardy; and (2) even under a flexible application of the same-elements test, it is clear that the loitering offense does not require any more proof than the school-zone offense.
III.
Because the issue presented is purely a question of law, we review this case de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). When an appellate court reviews a trial court’s analysis of a legal issue, it does not owe any special deference to the trial court’s legal interpretation. Ibid. “When a question of law is at stake, the appellate court must apply the law as it understands it.” State v. Mann, 203 N.J. 328, 337, 2 A.3d 379 (2010).
IV.
The threshold issue in this case is whether the municipal court had jurisdiction to resolve the disorderly-persons offense. Without jurisdiction, its adjudication of the disorderly-persons offense is a “legal nullity” and may not serve as the basis for defendant’s double-jeopardy claim. See State v. Le Jambre, 42 N.J. 315, 319, 200 A.2d 489 (1964). If it is a legal nullity, the State’s prosecution of the school-zone charge would automatically be permitted, and there would be no need to reach the double-jeopardy issue. If the municipal court did have jurisdiction over the disorderly-persons offense, however, prosecution on the *91 school-zone offense would be permitted only if it would not place defendant in double jeopardy.
Municipal courts have limited jurisdiction over criminal cases; they may only conduct proceedings in a criminal case before indictment. N.J.S.A. 2B:12-19(a). Once an indictment is returned, “[a] municipal court shall not discharge a person charged with an indictable offense without first giving the county prosecutor notice and an opportunity to be heard.” N.J.S.A. 2B:12-19(b).
On the other hand, municipal courts have unlimited jurisdiction over disorderly-persons offenses, N.J.S.A. 2B:12—17(c), which “are not crimes within the meaning of the Constitution of this State,” N.J.S.A. 2C:1-4(b). Rule 7.1 delineates the scope of municipal court jurisdiction. That rule also provides that disorderly-persons offenses are -within the statutory jurisdiction of municipal courts.
Rule 3:15—3(a)(1), a companion rule to Rule 7.1, directs municipal courts to “join any pending non-indictable complaint for trial with a criminal offense based on the same conduct or arising from the same episode.” Subsection (c) of that rule, however, explicitly provides that failure to join does not bar a subsequent prosecution on an indictable offense, unless that prosecution is barred by constitutional protections, such as double jeopardy. R. 3:15—3(c). Nothing in the rule dictates that failure to join when joinder is appropriate strips a municipal court of its statutorily granted authority over disorderly-persons offenses.
Here, defendant was charged in municipal court with a disorderly-persons offense, not with a criminal offense. N.J.S.A. 2B:12-19’s requirements therefore do not apply in the present case. The municipal court had jurisdiction to resolve defendant’s disorderly-persons charge pursuant to N.J.S.A. 2B:12-17. Because Rule 3:15-3(c) limits the consequences for a municipal court’s failure to join non-indictable offenses, moreover, failure to join does not automatically bar subsequent prosecution on the indictable offense so long as double-jeopardy concerns are allayed.
*92 For judicial efficiency and fairness to defendants, we urge careful coordination between the municipal courts and county prosecutors. There will always be outlier situations when unintentional events get the better of the system. Here, confusion bred more confusion, causing a failure to join the municipal charge with the indictable offenses. Nevertheless, we have said before that a “breakdown in communications between state and municipal officials forms no justification for depriving an accused person of his right to plead double jeopardy.” State v. Dively, 92 N.J. 573, 589, 458 A.2d 502 (1983) (quoting Robinson v. Neil, 366 F.Supp. 924, 929 (E.D. Tenn. 1973)).
Having determined that the municipal court had jurisdiction, we next review whether the subsequent prosecution on the school-zone charge placed defendant in double jeopardy.
V.
A.
The Double Jeopardy Clause of the Fifth Amendment provides that no person shall “be subject for the same offense to be twice put in jeopardy of life or limb.” U.S. Const. amend. V. The New Jersey Constitution contains a similar provision: “No person shall, after acquittal, be tried for the same offense.” N.J. Const. art. I, ¶ 11. This Court has consistently interpreted the State Constitution’s double-jeopardy protection as coextensive with the guarantee of the federal Constitution. State v. Schubert, 212 N.J. 295, 304, 53 A.3d 1210 (2012); Dively, supra, 92 N.J. at 578, 458 A.2d 502; State v. Barnes, 84 N.J. 362, 370, 420 A.2d 303 (1980).
The Double Jeopardy Clause contains three protections for defendants. It protects against (1) “a second prosecution for the same offense after acquittal,” (2) “a second prosecution for the same offense after conviction,” and (3) “multiple punishments for the same offense.” North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2,d 656, 664-65 (1969). Common to all three protections is the concept of “same offense.” Accordingly, a *93 prime concern when reviewing a double-jeopardy claim is “whether the second prosecution is for the same offense involved in the first.” State v. Yoskowitz, 116 N.J. 679, 689, 563 A.2d 1 (1989) (quoting State v. De Luca, 108 N.J. 98, 102, 527 A.2d 1355, cert. denied, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987)).
The United States Supreme Court first announced its test for determining whether a second prosecution is for the same offense in Blockburger, supra, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. The Court stated that “where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” Ibid. In other words, if each statute at issue requires proof of an element that the other does not, they do not constitute the same offense and a second prosecution may proceed. Ibid. This test has come to be known as the same-elements test.
The Blockburger same-elements test was the exclusive test for same-offense determinations until the United States Supreme Court decided Illinois v. Vitale, 447 U.S. 410, 421, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228, 238 (1980). There, the United States Supreme Court indicated that facts could possibly require more than a mechanical analysis of the elements of the two statutes. Ibid. The United States Supreme Court contemplated that a second prosecution could be barred if it relied on the same evidence used to prove an earlier charge. Ibid. This language “created controversy among state and federal courts over whether the traditional Blockburger test ha[d] been expanded.” Yoskowitz, supra, 116 N.J. at 690, 563 A.2d 1.
This Court read the language in Vitale as creating an alternative to BlockburgeVs same-elements test—the same-evidence test. See De Luca, supra, 108 N.J. at 107, 527 A.2d 1355; Dively, supra, 92 N.J. at 581-83, 458 A.2d 502. The United States Supreme Court reached the same conclusion a few years later and officially adopted the suggestion it set forth in Vitale. Grady v. *94 Corbin, 495 U.S. 508, 510, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548, 557 (1990).
Soon thereafter, the United States Supreme Court reevaluated and revised its position, holding that the same-evidence test was “wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy.” United States v. Dixon, 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556, 573 (1993). Deeming the same-evidence test unworkable, the Court reinstated the Blockburger same-elements test as the sole measure of whether two offenses constitute the same offense for double jeopardy purposes. Id. at 708-09, 113 S.Ct. at 2864, 125 L.Ed. 2d at 577. The Court specifically rejected its dicta in Vitale, which suggested a same-evidence test, stating “[n]o Justice, the Vitale dissenters included, has ever construed this passage as answering, rather than simply raising, the question on which we later granted certiorari in Grady.” Id. at 707, 113 S.Ct. at 2862, 125 L.Ed.2d at 575.
It took a mere three years for the United States Supreme Court to steer away from the same-evidence test; it quickly found that the test would be unworkable without crafting a number of exceptions to supplement it. See United States v. Felix, 503 U.S. 378, 389-91, 112 S.Ct. 1377, 1384-85, 118 L.Ed.2d 25, 36-37 (1992) (creating exception for conspiracy under which prior prosecution for substantive offense would not preclude prosecution for conspiracy to commit that offense). Fearing the necessity of more exceptions further denuding the same-evidence test, the Dixon Court eliminated it altogether in favor of the same-elements test. Dixon, supra, 509 U.S. at 710, 113 S.Ct. at 2863, 125 L.Ed.2d at 577.
Since Dixon, the majority of states have similarly ruled that the Blockburger same-elements test sets forth the proper test for determining whether two charges are the same offense. See, e.g., State v. Leighton, 645 So.2d 354, 355 (Ala. Crim. App. 1994); State v. Sanders, 205 Ariz. 208, 68 P.3d 434, 448 (Ariz. Ct. App.); Hughes v. State, 347 Ark. 696, 66 S.W.3d 645, 652 (2002); People v. Allen, 868 P.2d 379, 380 (Colo. 1994); State v. Alvarez, 257 *95 Conn. 782, 778 A.2d 938, 945-46 (2001), cert. denied, 534 U.S. 1138, 122 S.Ct. 1086, 151 L.Ed.2d 985 (2002); Forrest v. State, 721 A.2d 1271, 1278 (Del. 1999); Tyree v. United States, 629 A.2d 20, 21-22 (D.C. 1993); Dodd v. State, 240 Ga.App. 48, 522 S.E.2d 538, 539-40 (1999); Kelso v. State, 961 So.2d 277, 281-82 (Fla. 2007); People v. Sienkiewicz, 208 Ill.2d 1, 280 Ill.Dec. 516, 802 N.E.2d 767, 770-71 (2003); State v. Sharkey, 574 N.W.2d 6, 8 (Iowa 1997); State v. Schoonover, 281 Kan. 453, 133 P.3d 48, 62 (2006); Commonwealth v. Burge, 947 S.W.2d 805, 811 (Ky. 1996); In re Michael W., 786 A.2d 684, 690 (Md. 2001); People v. Ream, 481 Mich. 223, 750 N.W.2d 536, 544 (2008); Powell v. State, 806 So.2d 1069, 1074 (Miss. 2001); People v. Latham, 83 N.Y.2d 233, 609 N.Y.S.2d 141, 631 N.E.2d 83, 85 (1994); State v. Winkler, 266 Neb. 155, 663 N.W.2d 102, 108 (2003); State v. Rodriguez, 138 N.M. 21, 116 P.3d 92, 101 (2005); State v. Zima, 102 Ohio St.3d 61, 806 N.E.2d 542, 548 (2004); Commonwealth v. Caufman, 541 Pa. 299, 662 A.2d 1050, 1052 (1995); State v. Easler, 327 S.C. 121, 489 S.E.2d 617, 623 (1997); Flores v. Texas, 906 S.W.2d 133 (Tex. 1995); Coleman v. Commonwealth, 261 Va. 196, 539 S.E.2A 732, 733-35 (2001); State v. Gocken, 127 Wash.2d 95, 896 P.2d 1267, 1270-73 (1995); State v. Kurzawa, 180 Wis.2d 502, 509 N.W.2d 712, 720, cert. denied, 512 U.S. 1222, 114 S.Ct. 2712, 129 A. L.Ed.2d 839 (1994); Sweets v. State, 307 P.3d 860, 875 (Wyo. 2013).
Until this case, we have not had occasion to reevaluate our double-jeopardy jurisprudence in light of Dixon’s return to the same-elements test. As a result, appellate panels have split over whether the same-evidence test still applies in New Jersey. Compare State v. Colon, 374 N.J.Super. 199, 216, 863 A.2d 1108 (App. Div. 2005) (declining to find, in absence of instruction from this Court, that same-evidence test was no longer applicable); State v. Capak, 271 N.J.Super. 397, 402-04, 638 A.2d 918 (App. Div.) (recognizing Dixon’s holding, but deciding to apply same-evidence test until this Court holds otherwise), certif. denied, 137 N.J. 164, 644 A.2d 612 (1994), with State v. Kelly, 406 N.J.Super. 332, 350, 967 A.2d 898 (App. Div. 2009) (rejecting defendant’s same-evidence arguments based on Grady, which was overruled by Dixon), *96 aff'd on other grounds, 201 N.J. 471, 992 A.2d 776 (2010); State v. Ellis, 280 N.J.Super. 533, 550, 656 A.2d 25 (App. Div. 1995) (refusing to apply same-evidence test overruled by Dixon).
B.
We resolve the question of which test applies in our courts by adopting the same-elements test as the sole double-jeopardy analysis, thereby realigning New Jersey law with federal law. We no longer recognize the same-evidence test as a measure of whether two offenses constitute the same offense.
In reaching our conclusion, we are guided by the conundrums created by the same-evidence test as they played out before the United States Supreme Court. Rather than grafting exception upon exception onto a test that would eventually fall under its own weight, we embrace the same-elements test in its stead. The same-elements test analyzes the elements of the competing statutes to determine if each contains an element the other does not. If each statute contains at least one unique element, the subsequent prosecution may proceed.
The benefits of the same-elements test are noteworthy: the test is effortlessly applied at early stages of prosecution; it is capable of producing uniform, predictable results; and it aids defendants by reducing multiple court appearances. By contrast, under the same-evidence test, a court cannot determine whether two charges constitute the same offense until later in the process, after the State has proffered the evidence used to support each claim. “[Sjurely such a procedure is inconsistent with the Double Jeopardy Clause, which was specifically designed to protect the citizen from multiple trials.” Vitale, supra, 447 U.S. at 426, 100 S.Ct. at 2270, 65 L.Ed.2d at 242 (Stevens, J., dissenting).
Further, adoption of this test corrects our reliance on the now-repudiated dicta in Vitale in support of our addition of the same-evidence test to our double-jeopardy framework. See Dively, supra, 92 N.J. at 581, 458 A.2d 502.
*97 Finally, protections abound for defendants, enshrined in our Constitution, court rules, and statutes. See, e.g., N.J.S.A. 2C:1-8 (limiting prosecutions, trials, and convictions when a defendant’s conduct constitutes more than one offense); N.J.S.A. 2C:1-10(a)(1) (barring subsequent prosecution for a violation of a different statutory provision, where the former prosecution resulted in an acquittal and the subsequent prosecution is for an offense for which defendant could have been convicted on the first prosecution). For example, Court Rule 3:15—1(b) states that,
[e]xeept as provided by R. 3:15—2(b), a defendant shall not be subject to separate trials for multiple criminal offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction and venue of a single court.
This Court has long held that “[i]f the offenses are not joined [under that rule], the omitted offense may not be further prosecuted.” State v. Williams, 172 N.J. 361, 368, 799 A.2d 470 (2002) (citing State v. Gregory, 66 N.J. 610, 522-23, 333 A.2d 267 (1975)). That rule bars subsequent prosecutions for indictable offenses. Nothing in this opinion changes that joinder requirement.
Rule 3:15—1(b) is titled “Trial of Indictments or Accusations Together.” It commands that every crime—an offense defined by the criminal code or by any other statute of this State for which a sentence of imprisonment in excess of six months is authorized, N.J.S.A. 2C:1-4—known to the prosecutor at the time of the commencement of the first trial must be joined. As noted above, this Court has underscored that failure by the prosecution to properly join indictable offenses bars a subsequent prosecution. Williams, supra, 172 N.J. at 368, 799 A.2d 470. In contrast, Rule 3:15-3 is titled “Trial of Criminal Offenses and Lesser, Related Infractions.” Those two rules have different titles and address different subject matter, and there is no indication from the text of the rules that they can, or must, be read together.
We recognize a narrow circumstance where it is possible that neither the same-elements test nor the rule in Williams would prevent a second prosecution: where a defendant is acquitted in *98 Superior Court and the prosecution then files disorderly persons charges in municipal court relating to essentially the same conduct. Because Williams only bars a subsequent prosecution on another indictable offense and disorderly persons offenses are not indictable, the second prosecution might not be barred. As the State noted at oral argument, these situations are admittedly rare, because the State has little incentive to pursue a disorderly persons offense after acquittal on an indictable offense predicated on the same facts. The dissent nonetheless conjures up one hypothetical after another, which simply do not reflect reality. If those unlikely events unfolded, however, the second prosecution might well be barred on joinder or fundamental fairness grounds. See State v. Saavedra, 222 N.J. 39, 67-68, 117 A.3d 1169 (2015). As a further safeguard, we invite the Supreme Court Committee on Criminal Practice to review the joinder rule and consider adding non-indictable offenses to it.
What the dissent mistakes for efficiency is actually certainty. A defendant’s interest in avoiding a second prosecution should not be in jeopardy solely based on the ability of the defense or State to characterize evidence as necessary for a conviction. The same-evidence test’s reliance on a case-by-case approach creates the potential for wildly different results in cases with similar facts. While efficiency is certainly a by-product of today’s decision, the same-elements test provides equal protection to defendants who are similarly situated by combatting uncertainty in results.
We acknowledge that no double-jeopardy test will cover the entire spectrum of possible situations to come before this Court. The same-elements test is not a cure-all. It becomes part of the fabric of our double-jeopardy protections, joined with the Due Process Clause and Sixth Amendment Jury Trial clause, creating a fulsome array of safeguards for criminal defendants. See Akhil Reed Amar, Double Jeopardy Law Made Simple, 106 Yale L.J. 1807, 1809 (1997) (“[T]he [United States Supreme] Court has tied itself into knots because it has failed to carefully disentangle the Double Jeopardy, Due Process, and Jury Trial Clauses. As a *99 result, some defendants today are getting windfalls—needless and dangerous ‘get out of jail free’ cards—while other defendants are getting less than they constitutionally deserve.”).
Given those factors, we see no reason to deviate from the well-established tradition of keeping our double-jeopardy law coextensive with federal law. Here, we are faced with the difficult task of choosing among competing precedents: our line of cases holding that our double jeopardy case law is coextensive with the federal law or our cases supporting the same-evidence test. Because we believe there is good cause and a special justification to do so, see State v. Witt, 223 N.J. 409, 415, 126 A.3d 850 (2015), we remove the same-evidence test from future consideration in resolving double jeopardy questions.
Because our decision establishes a new rule of law, we apply the new singular same-elements standard prospectively to offenses committed after the date of this opinion. See, e.g., Witt, supra, 223 N.J. at 450, 126 A.3d 850. Here, in fairness to defendant, we conduct our double-jeopardy analysis using both the same-elements test and the now-removed same-evidence test because that was the legal landscape at the time he was charged. We now apply those principles to determine whether prosecution on defendant’s school-zone charge violated double jeopardy.
VI.
The facts of this case implicate two of the three protections of the Double Jeopardy Clause: protection against a second prosecution after conviction and protection against multiple punishments for the same offense. The two offenses at issue are loitering to possess marijuana, N.J.S.A. 2C:33-2.1(b), and possession with the intent to distribute within a school-zone, N.J.S.A. 2C:35-7(a). The loitering statute provides that a person commits a disorderly-persons offense if:
(1) he wanders, remains or prowls in a public place with the purpose of unlawfully obtaining or distributing a controlled dangerous substance ... and (2) engages in *100 conduct that ... manifests a purpose to obtain or distribute a controlled dangerous substance or controlled dangerous substance analog.
[N.J.S.A. 2C:33—2.1(b).]
In comparison, a violation of the school-zone statute occurs when a person “distributees], dispenses] or possesses] with intent to distribute a controlled dangerous substance ... while on any school property used for school purposes ... or within 1,000 feet of such school property.” N.J.S.A 2C:35—7(a).
Application of the Blockburger same-elements test to the two statutes would lead us to conclude that loitering to possess marijuana is not the same offense as possession within a school zone. Loitering requires proof that defendant’s conduct occurred in a public place, an element not required for proof of the school-zone offense. The school-zone offense, on the other hand, requires proof of purpose to distribute and possession within 1000 feet of a school zone—two elements not required for the proof of loitering. Thus, each offense contains at least one element not required to prove the other.
Under the same-evidence test, however, we find that defendant’s successive prosecution for the school-zone offense is prohibited because it is based on the same evidence that supported the plea and conviction on the loitering offense. The evidence necessary to support defendant’s loitering charge was his presence at 27th and Washington Streets, a public street comer, where he intended to distribute marijuana. Similarly, the evidence of the school-zone charge was defendant’s location at 27th and Washington Streets—within 1000 feet of a school building—where he possessed marijuana with the intent to distribute it. Clearly, the State relied on the same evidence to obtain defendant’s conviction on the school-zone charge that was used as the basis for defendant’s plea on the loitering charge. Accordingly, the two charges constitute the same offense under the same-evidence test, and the school-zone prosecution was improper. We therefore affirm the judgment of the Appellate Division barring defendant’s second prosecution as a violation of the Double Jeopardy Clause.
*101 In the interest of justice, we applied both analyses here; going forward, for offenses committed after the issuance of this opinion, we hold that the same-elements test will serve as the singular framework for determining whether two charges are in fact the same offense for purposes of double-jeopardy analysis.
VII.
The judgment of the Appellate Division is affirmed. Defendant’s conviction and sentence on the school-zone offense are vacated.
CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE’s opinion. JUSTICE ALBIN filed a separate, dissenting opinion in which JUSTICE LaVECCHIA joins.